## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **BRANDON JAMAAL RAMBO,** | ) | |
| **ID # 56974-177,** | ) | |
| **Movant,** | ) | |
| | ) | **No. 3:21-CV-1532-D-BH** |
| **vs.** | ) | **No. 3:18-CR-186-D(3)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *Amended Motion Under 28 USC §
2255*, received on August 30, 2021 (doc. 7), should be **DENIED** with prejudice.

### I.        BACKGROUND

Brandon Jamaal Rambo (Movant) challenges his federal conviction and sentence in Cause
No. 3:18-CR-186-D(3). The respondent is the United States of America (Government).

### A.      <u>Conviction and Sentencing</u>

After being charged by complaint with two others, Movant was charged by indictment with
one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 (Count
One), and one count of possession with the intent to distribute a controlled substance in violation
of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two). (*See* docs. 1, 31.)[2] The controlled substance
charged in both counts of the indictment was "a mixture or substance containing a detectable
amount of methamphetamine[.]" (doc. 31 at 1, 3.)[3] He pled guilty to Count One of the indictment,

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and
recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal
action, 3:18-CR-186-D(3).

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers
at the bottom of each filing.

under a plea agreement. (*See* docs. 51, 54.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself. (*See* doc. 51 at 1.) The plea agreement set out the minimum and maximum penalties for Count One; it stated that Movant had reviewed the federal sentencing guidelines with counsel and he understood that his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of the Court's consideration of the guidelines. (*See id.* at 2.) He understood that the Court had sole discretion to impose his sentence. (*See id.* at 2-3.) He had thoroughly reviewed all legal and factual aspects of the case with counsel, received satisfactory explanations from counsel concerning each paragraph of the plea agreement, and concluded that it was in his best interest to enter into the plea agreement rather than to proceed to trial. (*See id.* at 6.) The guilty plea was freely and voluntarily made and not the result of force or threats, or of promises apart from those included in the plea agreement, and there were no promises from anyone as to what sentence the Court would impose. (*See id.* at 5.)

Under the plea agreement, Movant also agreed that a factual resume he signed was true and would be submitted as evidence. (*See id.* at 1.) The factual resume set out the essential elements of the offense, including that "two or more persons, directly or indirectly, reached an agreement to possess with the intent to distribute and distribute a mixture or substance containing methamphetamine, a Schedule II controlled substance[.]" (doc. 50 at 1.) Movant admitted that on March 19, 2018, he was at his residence and his co-defendants were there "to remove the tire and wheels containing drugs from a Chevrolet truck parked in the rear of his residence." (*Id.* at 2.) He

also admitted that "the wheels and tires of the Chevrolet truck contained approximately 40 kilograms of methamphetamine concealed inside them", "agents found two kilogram[s] of methamphetamine in a closet in a bedroom in the residence", and a sedan parked in his garage "contained $81,360 U.S. currency (drug proceeds) in a hidden compartment in the back seat of the vehicle." (*Id.* at 2-3.) Movant further stipulated "that during the period that the conspiracy was ongoing, he and co-defendants [ ] possessed with intent to distribute[ ] and/or distributed a mixture or substance containing a detectable amount of methamphetamine," and he agreed that he had committed all the essential elements of the offense. (*Id.* at 3.)

At his re-arraignment on August 31, 2018, Movant stated under oath that he had not been treated recently for any mental illness or addiction to narcotic drugs of any kind and was not under the influence of any drug, medication, or alcoholic beverage of any kind. (*See* doc. 100 at 5.) He acknowledged under oath that he understood the nature of the charge to which he was pleading guilty, the plea agreement, and the plea agreement supplement. (*See id.* at 6.) He also acknowledged that he understood the rights he was giving up by pleading guilty and that he was waiving his right to appeal except in very limited circumstances. (*See id.* at 8-10, 14.) He understood that by pleading guilty to Count One, he was subjecting himself to penalties that included a maximum period of 20 years' imprisonment. (*See id.* at 10-11.) He affirmed that he had discussed with his attorney how the sentencing guidelines worked; he understood that the guidelines were advisory, his counsel's professional opinion concerning what the guideline range might be was not a guarantee or promise, and his advisory guideline range would not be determined until after a presentence investigation report (PSR) was completed and the parties were given an opportunity to object to the facts in the PSR and the proposed guideline range. (*See id.* at 12-13.) He affirmed that he was not pleading guilty based on any promises by anyone, other than those in

3

the plea agreement and supplement, no one threatened or attempted to force him to plead guilty, no one had made any specific prediction or promise to him about what his sentence would be, and he understood the Court alone would decide his sentence. (*See id.* at 7, 12.) He affirmed that he had carefully read and understood the factual resume, he had committed each of the essential elements of the offense set forth in it, and the facts stipulated therein were true and correct in every respect. (*See id.* at 15-17.) He pled guilty to Count One, and the Court found that his guilty plea was knowing and voluntary. (*See id.* at 15, 17.)

On November 2, 2018, the United States Probation Office (USPO) prepared a PSR in which it applied the 2018 United States Sentencing Guidelines Manual. (*See* doc. 66-1 at ¶ 35.) The PSR noted the stipulated facts in Movant's factual resume and determined that he was accountable for 799,904.78 kilograms of converted drug weight based on the d-methamphetamine hydrochloride (Ice), methamphetamine, and marijuana quantities seized from his residence and the wheels of the truck parked at his residence, and the drug proceeds seized from the sedan in his garage. (*See id.* at ¶¶ 15-20, 23-26.) Based on the amount of converted drug weight for which Movant was held accountable, his base offense level under the drug quantity table of U.S.S.G. § 2D1.1(c)(1) was 38. (*See id.* at ¶ 36.) Two levels were added based on importation of the methamphetamine from Mexico, and two levels were added for maintaining a premises for the purpose of manufacturing or distributing methamphetamine. (*See id.* at ¶¶ 37-38.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 39. (*See id.* at ¶¶ 44-46.) Based on a total offense level of 39 and a criminal history category of I, the guideline imprisonment range was 262 to 327 months. (*See id.* at ¶ 75.) Because 240 months was the statutory maximum for the offense, it became the guideline imprisonment range. (*See id.*)

On November 14, 2018, Movant's pretrial release was revoked based on multiple

violations of his conditions of release related to marijuana usage. (*See* doc. 72.) On November 25, 2018, Movant filed a sentencing memorandum for a downward variance because he lacked knowledge of the full scope and structure of his co-defendants' drug operation, had not been observed participating in the planning, organization, or communications with his co-defendants and their supplier, had not been observed retrieving or manipulating the drug shipment at issue when he was detained, and had the lowest level of accomplice liability. (*See id.* at 2.)

On December 27, 2018, the USPO issued an addendum to the PSR supplementing the PSR with information regarding the revocation of Movant's pretrial release and correcting a scrivener's error to the total converted drug weight for which he was held accountable, which did not affect the base offense level. (*See* doc. 81-1 at 1, ¶¶ 25-26, 36.) It also determined that Movant's violation of his conditions of pretrial release were inconsistent with acceptance of responsibility and removed the three-level deduction for acceptance of responsibility, resulting in a new total offense level of 42. (*See id.* at 1, ¶¶ 32-34, 44-46.) Based on a total offense level of 42 and criminal history category of I, the new guideline imprisonment range was 360 months to life. (*See id.* at ¶ 75.) Because 240 months was the statutory maximum for the offense, it remained the guideline imprisonment range. (*See id.*) No objections to the PSR or the addendum were filed.

At the sentencing hearing on February 22, 2019, Movant's counsel argued for a downward variance based on the same reasons set forth in his sentencing memorandum. (*See* doc. 97 at 5-6.) He noted Movant's lack of criminal history, his lack of knowledge of the magnitude of the criminal activity in which he was involved with his co-defendants, and his marijuana problem from which he wished to recover. (*See id.* at 4-7.) The Court found that to the extent a downward variance was warranted, it had been accounted for by the guideline imprisonment range, which was lower than it otherwise would have been due to the statutory cap. (*See id.* at 8-9.) By judgment dated February

25, 2019, Movant was sentenced to 240 months' imprisonment on Count One, to be followed by a three-year term of supervised release. (*See* doc. 88 at 1-3.)

He filed a notice of appeal of the judgment on February 26, 2019. (*See* doc. 90.) On appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed on May 6, 2021. *See United States v. Rambo*, 846 F. App'x 304 (5th Cir. 2021).  Movant did not file a petition for a writ of certiorari with the Supreme Court.

## B.    **Substantive Claims**

Movant's original § 2255 motion was received on June 29, 2021. (*See* No. 3:21-CV-1532-D-BH, doc. 2.) He filed an amended § 2255 motion, received on August 30, 2021, "to include an Affirmative Defense of Diminished Capacity for a lessor [sic] degree of culpability (and a lessor [sic] sentence) due to his anxiety and stress disorder coupled with schizophrenia features." (*Id.*, doc. 7 at 1.) The amended § 2255 motion also asserts the following grounds for relief based on the alleged ineffectiveness of counsel:

> In the case at bar, counsel did <u>not</u> raise the safety valve <u>18 USC § 3553(f)</u>, did <u>not</u> ask for 2-point drop in the guide-line since [Movant] did <u>not</u> import the drugs across the border, and counsel did <u>not</u> ask that [Movant] be sentenced under the Second Chance Act. Moreover, counsel did <u>not</u> communicate enough to ensure that his client was fully aware of the charges he faced, or offer mitigating evidence.

(*Id.*, doc. 7 at 2 (underlining in original).)[4] The Government filed a response on October 29, 2021. (*See id.*, doc. 10.) Movant filed a reply on November 16, 2021. (*See id.*, doc. 11.)

## II.    SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if

---

[4] Because resolution of some grounds for relief may impact some of the remaining claims, they are considered in an order different than presented by Movant.

condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

## III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Movant contends that trial counsel and appellate counsel rendered ineffective assistance. (*See* No. 3:21-CV-1532-D-BH, doc. 7 at 1-2.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and

that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Lucey*, 469 U.S. at 396. Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the movant must show a reasonable probability that but for counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

"Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

A.    <u>**Sentence Exposure**</u>

Movant contends that counsel was ineffective because he "did <u>not</u> communicate enough to ensure that his client was fully aware of the charges he faced[.]" (No. 3:21-CV-1532-D-BH, doc. 7 at 2 (underlining in original).) He argues that because he "was <u>not</u> familar [sic] with any legal concepts, or even how to navigate through the legal system, . . . his attorney should have taken the time to ensure that his client understood that he was faced-with [sic] a very long sentence for a serious offense (in the eyes of the law)." (*Id.* (underlining in original).) He also argues that "counsel should've helped him to understand the law in relation to the facts (and the maximum vs minimum sentence)." (*Id.*, doc. 11 at 5.) He states he "was under the impression that he was going to enter a plea of guilty to the marajuiana [sic] (that he was responsible for), <u>not</u> the methamphetamine that his co-defendant's [sic] were responsible for." (*Id.*, doc. 7 at 3-4; *see also id.*, doc. 11 at 5.) He claims that had he "known he was pleding [sic] guilty to the methamphetamine (not the marijuana), then he would not have pled guilty, but would have choose [sic] to go to trial." (*Id.*, doc. 7 at 5.)

"'[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel.'"  *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).  "'When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.'"  *Id.* (quoting *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)).

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland.*  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

*United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (citations and internal quotation marks omitted).

Even assuming for purposes of this motion only that counsel rendered deficient performance in communicating the extent of Movant's sentence exposure based on methamphetamine quantities attributable to him as alleged, deficient performance alone is insufficient to warrant relief under § 2255. *Strickland* also requires a showing of resulting prejudice. Here, Count One of the indictment expressly charged Movant with conspiring "to possess with intent to distribute and distribute a mixture or substance containing a detectable amount of methamphetamine[.]" (doc. 31 at 1.) It set out the manner and means of the conspiracy's acquisition, distribution, and delivery of methamphetamine, and its utilization of residences and concealment of methamphetamine quantities; no other controlled substance was mentioned in connection with Count One. (*See id.* at 1-2.) Movant's factual resume also set out the essential elements of Count One, including that two or more persons "reached an agreement to possess with

the intent to distribute and distribute a mixture or substance containing methamphetamine[,]" and he agreed that he had committed all of the essential elements of the offense and stipulated that he and his co-defendants "possessed with the intent to distribute[ ] and/or distributed a mixture or substance containing a detectable amount of methamphetamine[.]" (*Id.* at 2-3.) He was advised both through the plea agreement and by the Court in person that by pleading guilty to Count One, he was subjecting himself to a term of imprisonment of not more than 20 years. (*See* doc. 51 at 2; doc. 100 at 10-11.) He was also advised though the plea documents and at his re-arraignment that his sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not binding. (*See* doc. 51 at 2-3; doc. 100 at 12-13.)  He swore in open court that he had the opportunity to read the indictment carefully and discuss it with counsel, understood the nature of the charge to which he was pleading guilty, understood the factual resume before he signed it, and had committed each of the essential elements set forth in the factual resume, and that all of the stipulated facts in the factual resume were true and correct. (*See* doc. 100 at 5-6, 16-17.)

Regardless of counsel's communication to him about the charges he faced, Movant cannot show prejudice under *Strickland* because his plea documents and responses under oath to the Court's questioning show that he was clearly informed about and understood his maximum sentence exposure when he pled guilty under the plea agreement. Additionally, to the extent he alleges that he would not have pled guilty if not for counsel's alleged deficient communication on his sentence exposure, a court should not "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017); *see also United States v. Guzman*, No. 19-10783, 2021 WL 4610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam) (holding that the movant

"must substantiate any preference to proceed to trial—if he had been properly advised on the sentence he was facing—with 'contemporaneous evidence,' not post hoc assertions."). Movant provides only conclusory and *post hoc* allegations of prejudice, which are insufficient to show a reasonable probability that he would have rejected the plea agreement and insisted on proceeding to trial.[5] Because Movant has failed to satisfy his burden under *Strickland*, the claim should be denied.

**B.    <u>Safety Valve</u>**

Movant contends that counsel was ineffective because he "did <u>not</u> raise the safety valve [sic] <u>18 USC § 3553(f)</u>[.]" (No. 3:21-CV-1532-D-BH, doc. 7 at 2 (underlining in original).) He argues that he "qualified under all five of the parts found in <u>18 USC § 3553</u>(f)," but "trial counsel did <u>not </u>bring this to the Court's attention, nor request a reduction under <u>18 USC § 3553</u>(f)." (*Id.*, doc. 7 at 3 (underlining in original).) He claims that "[h]ad counsel done so it is quite possible that the Court would have reduced [Movant's] sentence – since [Movant] pled 'guilty' to a drug crime of at least fifty grams or more which carries a mandatory minimum sentence (five-year manatory [sic] minimum)." (*Id.*) He also claims because he "had no prior offenses with only a two-point Criminal History (for the instant offense) [he] could have received a sentence reduction from the court under <u>U.S.S.G. § 5C1.2</u>." (*Id.* (underlining in original).)

"Section 3553(f), the First Step Act's 'safety valve,' exempts certain defendants convicted of controlled-substance offenses from mandatory-minimum sentences," if they meet the criteria

---

[5] Movant also appears to allege that counsel was ineffective by having him "plead to the most severe maximum sentence[.]" (No. 3:21-CV-1532-D-BH, doc. 11 at 5.) His allegation is refuted by the record; he pled guilty to an offense carrying a penalty of 0 to 20 years' imprisonment, his plea documents did not include any agreement between the parties regarding the length of his sentence, and he was advised through the plea documents and at his re-arraignment that his sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not binding, as discussed. (*See* doc. 51 at 2-3; doc. 100 at 12-13.) Accordingly, to the extent his claim is premised on the allegation that he "plead [sic] guilty to the maximum sentence," it is without merit and should be denied on this additional basis.

set forth in § 3553(f)(1)-(5). *United States v. Montero*, No. 21-30767, 2023 WL 2400746, at *1 (5th Cir. Mar. 8, 2023). Section 5C1.2(a) of the sentencing guidelines also "include[s] a safety-valve provision, which generally mirrors § 3553(f), and provides a two-level offense level reduction for defendants who satisfy the safety-valve requirements." *United States v. Jenkins*, No. 22-30557, 2023 WL 4351241, at *1 (5th Cir. July 5, 2023) (citing U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a)(1)).

Here, Movant's argument that he qualified for the safety-valve exceptions to the statutory minimum sentence under § 3553(f) and § 5C1.2 because he "pled 'guilty' to a drug crime of at least fifty grams or more which carries a mandatory minimum sentence (five-year manatory [sic] minimum)" is refuted by the record. (No. 3:21-CV-1532-D-BH, doc. 7 at 3.) He was convicted under § 846 of conspiracy to distribute a controlled substance, namely a mixture or substance containing a detectable amount of methamphetamine in violation of §§ 841(a)(1) and (b)(1)(C); his offense of conviction does not carry a statutory mandatory minimum sentence. (*See* docs. 31, 88); *Terry v. United States*, 141 S. Ct. 1858, 1865 (2021) (Sotomayor, J., concurring) ("As a baseline, § 841(b)(1)(C) specifies a maximum penalty of 20 years imprisonment, with no mandatory minimum."); 21 U.S.C. § 846 (providing that any person who commits an offense under the subchapter "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."). Because his offense did not have a statutory minimum sentence from which he could have received relief under the safety-valve provisions of § 3553(f) or § 5C1.2(a), any argument raised by counsel under these provisions would have been without merit. Because counsel is not deficient for failing to raise a meritless argument, Movant fails to satisfy the first *Strickland* prong. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

Because Movant has not identified a meritorious basis upon which counsel could have argued for a safety-valve exception, he also has failed to show *Strickland* prejudice, i.e., a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficiency. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument. . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). In the sentencing context, this requires a showing that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See, e.g., Glover v. United States*, 531 U.S. 198, 200 (2001). Movant has failed to satisfy both *Strickland* prongs, and the claim should be denied.

## C.    <u>Investigation</u>

Movant contends that counsel was ineffective because he failed to investigate the importation enhancement and a mitigation defense based on diminished capacity. (*See* No. 3:21-CV-1532-D-BH, doc. 7 at 5, 7-8.)

Counsel has a duty to investigate the charges and evidence against his client.  *Strickland*, 466 U.S. at 690-91. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (stating, in context of direct appeal that, "[t]o establish his failure to investigate claim, [the defendant] must allege with specificity what the investigation would have revealed and how it would have benefitted him."). "[T]here is no presumption of prejudice based on the failure to investigate." *Gonzalez v. United States*, Nos. 5:19-CV-145, 5:15-CR-1112-01, 2020 WL 1893552, at *3 (S.D. Tex. Jan. 24, 2020) (citing

*Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990)).

### 1. Importation Enhancement

Movant contends that counsel was ineffective because he "did <u>not</u> ask for 2-point drop in the guide-line since [Movant] did <u>not</u> import the drugs across the border[.]" (No. 3:21-CV-1532-D-BH, doc. 7 at 2 (underlining in original).) He argues that counsel "should have taken the time out 'to thoroughly investigate his clients [sic] position'[,]" because "[h]ad he done so, he would have been aware that his client knew nothing of the methamphetamine importation and operation of his codefendant's [sic] other than supplying them with the stash-house to use in return for the marijuana." (*Id.*, doc. 7 at 5.)

Here, the PSR stated that a cooperating coconspirator (CC) informed law enforcement that a Mexico-based methamphetamine source of supply was transporting large quantities of methamphetamine hidden in vehicles or vehicle tires to Movant's residence, where the methamphetamine would be removed. (*See* doc. 66-1 at ¶ 10.) It also stated that the truck found at Movant's residence from which law enforcement seized methamphetamine concealed in the tires had entered the country from Mexico the day before and twice in December 2017. (*See id.* at ¶ 11.) The PSR therefore added the two-level enhancement under U.S.S.G. § 2D1.1(b)(5) because the methamphetamine was imported from Mexico. (*See id.* at ¶ 37.) The record demonstrates a factual basis for the application of the importation enhancement, and Movant provides no facts or evidence to challenge the PSR's findings. The record also shows that counsel argued in a sentencing memorandum that Movant "had no connection beyond [the co-defendants] within the United States, nor did he have knowledge of the full scope and structure of their drug operation", and he argued at sentencing that Movant "has no ties in any way to Mexico." (doc. 75 at 2; doc. 97 at 5.)

Movant's arguments that counsel failed to discover through investigation that he did not

personally import the methamphetamine from Mexico and "knew nothing of the methamphetamine importation," and to challenge the two-level importation enhancement on this basis, fail. (No. 3:21-CV-1532-D-BH, doc. 2 at 5.) In the Fifth Circuit, the "two-level sentencing enhancement of U.S.S.G. § 2D1.1(b)(5) applies when the 'the offense involved the importation of . . . methamphetamine,' even if the defendant did not know that the methamphetamine was imported." *United States v. Serfass*, 684 F.3d 548, 554 (5th Cir. 2012). Aside from conclusory allegations, Movant has alleged no legitimate basis upon which counsel could or should have challenged the importation enhancement. Because counsel is not deficient for failing to make a futile or meritless argument, and conclusory allegations are insufficient to show deficient performance, Movant fails to satisfy the first *Strickland* prong. *See Sones*, 61 F.3d at n.5. He also has failed to show prejudice. *See, e.g.*, *Kimler*, 167 F.3d at 893. The claim should be denied.

### 2. *Diminished Capacity*

Movant contends that counsel "should have sought a downward departure from the court under either a diminished capacity defense and/or a downward variance or departure for his criminal history and characteristics (since there was none) which points-out a lessor [sic] culpability and a lessor [sic] sentence." (No. 3:21-CV-1532-D-BH, doc. 7 at 8.) He claims that he "suffers from major anxiety, and clinical depressive disorders with acute schizophrenia that not only affected and impeded his ability to understand the world (at times), but drove him towards the marijuana to mask his personal distortions[,]" and "[h]ad counsel taken the time out to investigate, he would have uncovered his client's mental deficiencies and used them for a diminished capacity defense to mitigate [his] sentence." (*Id.*, doc. 7 at 7.) According to Movant, his "mental abnormalities, or mental deficiencies should have been brought to the attention of the court for a decision . . . . . . [sic] and even if the court determined that [his] deficiencies did not

warrant an exemption from criminal sanctions, they nevertheless would have diminished his personal culpability warranting a more lenient sentence under 18 USC § 3553(a)." (*Id.* (underlining in original).)

Under the sentencing guidelines, "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. The guidelines define a "significantly reduced mental capacity" as a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt.1. A downward departure under § 5K2.13 is not permitted if the defendant's "significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13.

Here, Movant fails to show that he suffered from a "significantly reduced mental capacity" at the time he committed the charged offense that substantially contributed to the offense. *Id.* Although he is allegedly currently receiving psychiatric treatment in prison for "major anxiety, and clinical depressive orders with acute schizophrenia," he provides no facts or evidence showing that he suffered from the same conditions at the time of the offense or that they caused a significantly reduced mental capacity that contributed to the commission of the offense. (No. 3:21-CV-1532-D-BH, doc. 7 at 7.) The record shows that he reported being depressed by his current situation, and his mother reported he may be depressed because he missed much of his childhood. (*See* doc. 66-1 at ¶¶ 61-62.) At his re-arraignment, he testified that he had not been treated recently for any mental illness or addiction. (*See* doc. 100 at 5.) Aside from conclusory and unsubstantiated statements, which are insufficient to carry his burden under *Strickland*, he fails to show or explain

17

what further investigation counsel could have conducted that would have been advantageous to him, and how it would have resulted in a different outcome.[6] *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) ("[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.") (citation and internal quotation marks omitted); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). He has not shown that counsel was deficient for failing to investigate his alleged diminished capacity.

As for Movant's allegations that counsel "should have sought. . . a downward variance or departure for his criminal history and characteristics (since there was none) which points-out a lessor [sic] culpability and a lessor [sic] sentence," they are refuted by the record. (No. 3:21-CV-1532-D-BH, doc. 7 at 8.) Counsel sought a lower sentence based on Movant's characteristics, lack of criminal history, and mitigating factors in his sentencing memorandum and at sentencing.[7] (*See* doc. 75 at 1-2; doc. 97 at 4-7.) Movant also has not shown that counsel was deficient on this basis.

Regarding prejudice, "where the alleged error of counsel is a failure to investigate or

---

[6] In his reply, Movant argues that counsel "would have discovered his client's underlying medical conditions that lead [sic] to a diminished capacity defense, i.e., chronic depression disorder (why he was self medicating), and acute schizoprenia [sic] features (which interfers [sic] with a persons [sic] thought processes)." (No. 3:21-CV-1532-D-BH, doc. 11 at 7.) He provides no evidence beyond his conclusory statements to show that his alleged medical conditions, which appear to have been diagnosed after he was imprisoned, would have been discovered, or that even if discovered, that they would have supported a diminished capacity argument, as discussed. His conclusory and unsubstantiated allegations are insufficient to warrant § 2255 relief on this claim.

[7] That counsel was unsuccessful in obtaining a downward departure also does not render counsel ineffective. *See, e.g.*, *Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) ("The fact that trial counsel was unsuccessful in his efforts does not constitute, in light of the entire record, a basis for habeas corpus relief.").

discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill v Lockhart*, 474 U.S. 52, 59 (1985). Here, Movant has not shown that further investigation would have unearthed evidence that would have caused him to plead not guilty and proceed to trial or would have led counsel to change his recommendation as to the plea. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). Nor has he provided any facts or evidence beyond mere possibility and conclusory statements to show a reasonable probability that his sentence would have been less harsh absent counsel's alleged deficiency. He therefore has failed to show *Strickland* prejudice, and the claim should be denied. *See Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) ("the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong.").

**D.    <u>Second Chance Act</u>**

Movant contends that counsel was ineffective because he "did <u>not</u> ask that [Movant] be sentenced under the Second Chance Act." (No. 3:21-CV-1532-D-BH, doc. 7 at 2 (underlining in original).) He argues that "[a]t the least, the attorney should have asked for setencing [sic] under the Second Chance Act since it was his client's first ever conviction." (*Id.*) According to Movant, "that is why the Second Chance Act was enacted (for first-time felony offenders)[.]" (*Id.*)

The Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (Apr. 9, 2008) (Second Chance Act), was enacted to "reauthorize the grant program for reentry of offenders into the community..., to improve reentry planning and implementation, and for other purposes." *Id.* It includes "funding for such services as appropriate drug treatment, job training and placement,

educational services, and other services or support needed for reentry, and is intended to rehabilitate prisoners and reduce recidivism." *Young v. Bragg*, No. EP-10-CA-138-FM, 2010 WL 11545568, at *3 (W.D. Tex. Apr. 23, 2010) (citing *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It also "amended the statutory provisions authorizing the Bureau of Prisons to determine an inmate's eligibility for placement in a halfway house." *United States v. Lopez*, 624 F. App'x 234, 234-35 (5th Cir. 2015). It does not, however, include any provisions relating to the sentencing of defendants. *See generally*, Second Chance Act, Pub. L. No. 110-199, 122 Stat. 657. Movant fails to show a meritorious argument under the Second Chance Act which counsel could have raised for purposes of sentencing. *See Sones*, 61 F.3d at n.5. He also fails to provide any facts or evidence showing a reasonable probability that his sentence would have been less harsh had counsel raised any sentencing arguments under the Second Chance Act. He has not satisfied both *Strickland* prongs, and the claim should be denied.

E.    **Mitigating Role Reduction**

For the first time in his reply, Movant contends that "counsel should have asked the court for a level-reduction under USSG § 3B1. 2. [sic] (Mitigating role) since all he did was let his codefendants use his house (for their conspiracy with methamphetamine) in return for his ([Movant's]) marijuana thereby showing a 'minor role' in the offense." (No. 3:21-CV-1532-D-BH, doc 11 at 8.) He argues that "[h]ad counsel asked for the 3-level reduction for [his] minor part, the offense level would have dropped, from 39 to 36, which would have effected [sic] his sentencing range from 262-327 to 188-235 which is clearly outside of [his] guideline range showing a different outcome, and also shows prejudice, as well as non-frivolous claims." (*Id.* (underlining in original).)

Section 3B1.2 of the United States Sentencing Guidelines provides for a four-level

reduction to the offense level for a defendant who is a "minimal participant," a two-level reduction for a defendant who is a "minor participant," and a three-level reduction for a defendant falling between those two categories. This section applies only to a defendant who plays a part in committing the offense that makes him "substantially less culpable" than the average participant in the criminal activity. U.S.S.G. § 3B1.2, cmt. n.3(A); *see also United States v. Thomas*, 963 F.2d 63, 65 (5th Cir. 1992) ("Even if other codefendants were more culpable, that does not automatically qualify [defendant] for either minor or minimal status. Each participant must be separately assessed."). A defendant is entitled to this reduction if he shows at sentencing by a preponderance of the evidence: "(1) the culpability of the average participant in the criminal activity; and (2) that [ ]he was substantially less culpable than that participant." *United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016).

Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires that motions filed pursuant to § 2255 "specify all the grounds for relief available to the moving party." A movant may amend a § 2255 motion in accordance with Fed. R. Civ. P. 15. *See United States v. Saenz*, 282 F.3d 354, 355-56 (5th Cir. 2002). New claims raised for the first time in a reply brief need not be considered, however. *See United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (holding that a district court does not abuse its discretion in refusing to consider new issues in a § 2255 reply brief after the government filed its response); *Brown v. United States*, No. 3:14-CV-4031-D (BH), 2016 WL 7187450, at *6 (N.D. Tex. Nov. 7, 2016).

Even assuming for purposes of this motion only that Movant's claim was properly raised in his § 2255 filings, he has failed to show prejudice under *Strickland*. He has failed to allege any facts or evidence beyond conclusory statements and speculation to show a reasonable probability

that counsel would have been successful in obtaining a mitigating role reduction under § 3B1.2 for Movant's alleged minor role. His conclusory allegations and speculation are insufficient to show resulting prejudice under *Strickland*. *See Miller*, 200 F.3d at 282; *Ross*, 694 F.2d at 1011. Further, even if counsel had successfully moved for a 3-level mitigating reduction as alleged, Movant's total offense level would have been reduced from 42 to 39, and his guideline imprisonment range would have remained unchanged at 240 months because of the statutory maximum.[8] (*See* doc. 81-1 at ¶ 46.) Because his guideline sentence would have been unchanged even with the mitigating role reduction argued by Movant, he also has not shown a reasonable probability that his sentence would have been less harsh. Because his allegations fail to demonstrate *Strickland* prejudice, the performance prong need not be addressed. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995). He is not entitled to § 2255 relief on this claim and it should be denied.

F.    **Appeal Proceedings**

The reply also alleges for the first time that "counsel didn't file an appeal regardless of [Movant's] request." (No. 3:21-CV-1532-D-BH, doc. 11 at 3.) He argues that "counsel himself told [him] that he needed to file under ineffective assistance of counsel, but he refused to file against himself, and instead, filed an Anders Brief—against his client's wishes and/or 'his direct request for an appeal.'" (*Id.*) He also argues that "trial counsel was also appeallate [sic] counsel and failed to perfect any meritorious issues for appeal and is the reason why the Court agreeed [sic] and granted his Motion to withdraw, and dismissed the appeal." (*Id.*, doc. 11 at 2.)

As discussed, the Court may decline to consider claims asserted for the first time in

---

[8] Movant alleges that his offense level would have been reduced from 39 to 36, resulting in a reduction of the guideline imprisonment range from 262 to 327 months to 188 to 235 months. (*See* No. 3:21-CV-1532-D-BH, doc. 11 at 8.) He appears to erroneously rely on the guideline calculations in his original PSR. (*See* doc. 66-1 at ¶¶ 46, 75.) The PSR addendum subsequently amended the original guideline calculations, however, resulting in a new total offense level of 42 and a corresponding guideline imprisonment range of 360 months to life. (*See* doc. 81-1 at ¶¶ 46, 75.)

Movant's reply. Even assuming for purposes of this motion only that Movant's claims were properly raised in his § 2255 filings, however, they fail. To the extent he claims generally that "counsel didn't file an appeal regardless of [Movant's] request," his claim is refuted by the record. (No. 3:21-CV-1532-D-BH, doc. 11 at 3.) The record shows that counsel filed a timely notice of appeal of the judgment. (*See* doc. 90.) On appeal, counsel filed a 25-page *Anders* brief and a supplemental letter brief. *See* Initial Brief for the Appellant, *Rambo*, 846 F. App'x 304 (No. 19-10229), 2019 WL 2419945; Supplemental Letter Brief, *Rambo*, 846 F. App'x 304 (No. 19-10229), 2019 WL 6696184. Movant is not entitled to § 2255 relief on this meritless claim.

Movant's claim that appellate counsel was ineffective for filing an *Anders* brief against his wishes and failing "to perfect any meritorious issues for appeal" also fails. (No. 3:21-CV-1532-D-BH, doc. 11 at 2.) "To demonstrate ineffective assistance of counsel based on his appellate counsel's failure to file a merits brief, movant must show that his 'counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them' and that 'but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.'" *United States v. King,* No. 4:14-CV-010-A, 2014 WL 1381385, at *3 (N.D. Tex. Apr. 8, 2014)(quoting *Smith,* 528 U.S. at 285). Here, Movant cannot demonstrate prejudice because he has not identified any meritorious claims upon which he was likely to prevail on appeal. The Fifth Circuit dismissed his direct appeal as frivolous, and to the extent he argues that counsel should have raised the ineffective assistance claims raised in this proceeding on appeal, the Fifth Circuit found that "[t]he record is not sufficiently developed to allow us to make a fair evaluation of [Movant's] claim of ineffective assistance of counsel; we therefore decline to consider the claim without prejudice to collateral review." *Rambo*, 846 F. App'x at 304-05 (citing *United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014)). Movant's counsel was not ineffective on appeal for failing to raise ineffective

assistance of trial counsel claims. Movant has not satisfied his burden under *Strickland*, he is not entitled to § 2255 relief on this claim, and it should be denied.

## IV.    INVOLUNTARINESS OF PLEA

Movant contends that he "did not knowingly or volunarily [sic] plead guilty to trafficking methamphetamine." (No. 3:21-CV-1532-D-BH, doc. 11 at 6.) He claims he "plead [sic] guilty on the advise [sic] of counsel," and that his "claim is embedded in ineffective assistance of counsel for not raising defenses to mitigate his clients [sic] case, because he failed to investigate to determine his client's mental state (beyond the addiction)." (*Id.*) He argues that counsel "was ineffective for not recognizing a mentally challenged client (which he would have had he investigated)[,]" and thus his "plea of guilty was unvoluntary [sic] and unknowingly entered into."[9] (*Id.*, doc. 11 at 7.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523

---

[9] Although he appears to challenge the voluntariness of his guilty plea for the first time in his reply, he argues that it was raised in his § 2255 motion in connection with his ineffective assistance of counsel allegations relating to his mental health and alleged bases for mitigation. (*See* No. 3:21-CV-1532-D-BH, doc. 11 at 6.) Assuming for purposes of this motion only that this claim was properly raised in his § 2255 filings, the Court addresses it.

U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks omitted). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns:

absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

As discussed, Movant's plea documents, the Court's questioning at his re-arraignment, and his responses under oath demonstrate that at the time he pled guilty, he understood the nature and elements of the offense, and he knew that he was subject to a maximum sentence of 20 years' imprisonment on Count One, the Court alone would decide his sentence after a PSR was prepared and the parties had an opportunity to object to it, the sentencing guidelines were advisory and not binding, his counsel's professional opinion concerning what the guideline range might be was not a guarantee or promise, and no one could predict with certainty the outcome of the Court's consideration of the sentencing guidelines. (*See* doc. 50 at 1, 3; doc. 51 at 1-3; doc. 100 at 10-14, 16-17.) With this knowledge, he went forward with his guilty plea.

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248,

1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of verity given to his sworn statements in open court, and the great evidentiary weight accorded to court records. *See Blackledge*, 431 U.S. at 74. His contemporaneous plea documents and sworn statements in open Court contradict his allegations that his plea to Count One was not knowing and voluntary. To the extent his assertions rely on the merits of his claim that counsel was ineffective for failing to investigate his mental state or raise arguments at sentencing relating to it, he has failed to show that he is entitled to relief for the reasons discussed. Movant has not shown that his guilty plea was involuntary or that he was unaware of the consequences of pleading guilty, and this claim should be denied.

## V.    MISAPPLICATION OF THE SENTENCING GUIDELINES

In a footnote, Movant contends that "the 2-points added for manufacturing [sic] or distributing meth, is in error because [Movant] only used it as a stash house (and nothing else)." (No. 3:21-CV-1532-D-BH, doc. 7 at 5, n..) He does not otherwise address or discuss this claim in his § 2255 pleadings. To the extent this claim can be liberally construed as alleging an independent ground for § 2255 relief, it fails.

It is well established that the technical application of the sentencing guidelines is not subject to collateral review in a § 2255 motion. *See, e.g., United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996). "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255

motions." *Williamson*, 183 F.3d at 462. Accordingly, Movant's claim that the drug premises enhancement under U.S.S.G. § 2D1.1(b)(12) was erroneously applied is not cognizable under § 2255 and entitles him to no relief.

The claim also lacks merit. Under § 2D1.1(b)(12), a defendant's base offense level is increased by two if "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance[.]" U.S.S.G. § 2D1.1(b)(12). The commentary to § 2D1.1(b)(12) provides additional guidance for when the enhancement applies:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, **including storage of a controlled substance for the purpose of distribution**.

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

U.S.S.G. § 2D1.1 cmt. n.17 (emphasis added).

Here, the underlying criminal investigation revealed that Movant maintained the residence that was used to remove vehicle tires containing hidden quantities of methamphetamine. (*See* doc. 66-1 at ¶ 22.) As discussed, a CC informed law enforcement that a Mexico-based methamphetamine source of supply was transporting large quantities of methamphetamine hidden in vehicles or vehicle tires to a local residence. (*See id.* at ¶ 10.) The residence was surveilled, Movant's codefendants were observed at the residence and were detained at or near the residence, and he was detained as he exited the residence. (*See id.* at ¶ 11.) Movant informed law enforcement that the residence was his; kilogram quantities of ice, methamphetamine, and marijuana, and cash were found during a search of residence and the vehicles parked there, one of which was registered to Movant. (*See id.* at ¶¶ 14-20.) Based on this, the PSR added two levels to Movant's offense

28

level under § 2D1.1(b)(12) for maintenance of a premises. (*See id.* at ¶ 38.)

Movant provides no evidence rebutting the facts, evidence, and admissions upon which the enhancement was applied in the PSR. Rather, he admits in his § 2255 pleadings that "[t]here is no doubt that [he] agreed to allow his codefendant's [sic] to use his house as their stash-house," and "all he did was let his codefendants use his house (for their conspiracy with methamphetamine) in return for his ([Movant's]) marijuana[.]" (No. 3:21-CV-1532-D-BH, doc. 7 at 4; *id.*, doc. 11 at 8.) His conclusory statement that the enhancement does not apply because he "only used [the residence] as a stash house (and nothing else)" is without merit; as noted, "storage of a controlled substance for purposes of distribution" is sufficient to support the application of the enhancement. *See* U.S.S.G. § 2D1.1 cmt. n.17. Accordingly, even if his claim were cognizable in this habeas action, it does not entitle him to § 2255 relief, and it should be denied.

## VI.    EVIDENTIARY HEARING

Movant requests an evidentiary hearing before this Court on his claims. (*See* No. 3:21-CV-1532-D-BH, doc. 11 at 7, 9.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross*, 694 F.2d at n.2.

Here, Movant has failed to come forward with independent indicia in support of the likely merit of his claims. *See Reed*, 719 F.3d at 373. He has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## VII.    RECOMMENDATION

The *Amended Motion Under 28 USC § 2255*, received on August 30, 2021 (doc. 7), should

be **DENIED** with prejudice.

**SIGNED this 29th day of November, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE